THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| **Plaintiff** | : | |
| v. | : | Crim. No. 22 CR 341 (CJN) |
| **TIYDRE EDWARDS,** | : | |
| **Defendant.** | : | |

## SENTENCING MEMORANDUM

Tiydre Edward is committed to making the necessary adjustments in his life to provide a stable environment upon his release. Mr. Edwards grew up in 'Simple City', a public housing complex and notoriously violent neighborhood in Southeast Washington, D.C. His mother, Ms. Danielle Hamilton, was a single parent raising her children with the help of her mother, however, Mr. Edwards fell victim to the surrounding violence.

However, viewing Mr. Edwards through the lens of identifying numbers, overlooks the most significant and best parts of his character. The PSR does not acknowledge the active, involved father who is determined to ensure that he is a present and involved part of his children's lives.

Reducing him to a PDID number erases the fact that despite Mr. Edwards' lack of education, formal training, and felony record, he has supported his children whenever possible. The government's request for a sentence at the high

end of the guideline range (62 months), diminishes the significance of Mr. Edwards' value to his family and his children and is a request for a sentence that is greater than necessary.

Mr. Edwards' plea agreement reserves the right to seek a sentence at the low end of the Estimated Guidelines Range based upon factors pursuant to 18 U.S.C. § 3553(a). Mr. Edwards now submits this memorandum to aid the Court in determining the appropriate sentence pursuant to 18 U.S.C. § 3553(a). These factors will demonstrate that a sentence in prison is the appropriate sentence in this case.

## **STATUTORY FACTORS**

18 U.S.C. § 3553(a), requires a sentencing court to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in the second paragraph of the statute. In determining the appropriate sentence, the Court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

>     (C) to protect the public from further crimes of the defendant; and
>
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission;
>
> (5) any pertinent policy statement—
>
>     (A) issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

*See*, 18 U.S.C. § 3553(a) (1-7).

Nearly 20 years after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), it is now "emphatically clear" that the "Guidelines are guidelines – that is, they are truly advisory." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). The Guidelines are no longer "the only

consideration" at sentencing, *Gall v. United States*, 552 U.S. 38, 49 (2007). Rather, the Guidelines merely provide a "starting point" for the Court's sentencing considerations. *Id.*; *accord Cunningham v. California*, 549 U.S. 270 (2007). The Court is to impose its sentence after "mak[ing] an individualized assessment based on the facts presented" in each particular case. *Id.* The Court need not find "extraordinary circumstances to justify a sentence outside of the Guidelines range." *Id.* at 47.

## ARGUMENT

**1. The Nature and Circumstances of the Offense**

In this case, Mr. Edwards pled guilty to Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 USC § 922(g)(1). The offense conduct is outlined in detail in the Statement of the Offense and is only summarized briefly below.

Members of the Metropolitan Police Department went to the location where Mr. Edwards was posting on his Instagram Live with his childhood friends behind 4807 Alabama Avenue SE. When the police arrived, they recovered a black .45 Glock 30 from the trash can and Mr. Edwards was placed under arrest. Mr. Edwards realizes that he should not have been carrying a gun. Witnessing gun violence throughout his life, however, he understandably lives

with the fear of being killed. Despite Mr. Edwards' deep-rooted fear of dying, he should have found an alternative to possessing a weapon. Additionally, as a young black man, Mr. Edwards' unadulterated fear of police explains why he ran when the police arrived on the scene. Mr. Edwards has now accepted responsibility for his actions and entered a guilty plea in this case.

  2. **The History and Characteristics of the Defendant**

Tiydre Edwards' grew up in Southeast Washington D.C. during his childhood. He was introduced to the 'street life' at an early age and began using marijuana at the age of 12. By age 15 he had been arrested in a stolen car and by the 11th grade he had dropped out of high school. Mr. Edwards was drinking alcohol at age 17 and by age 18 he had been convicted of Robbery and sentenced to 10 years in prison.

As a single mother, Ms. Edwards loved her son, but she was unable to shield him from the most dangerous aspects of adult life. Mr. Edwards grew up fast, and as an adolescent, he absorbed the reality of what was happening around him. As a victim of, and witness to, neighborhood violence, Mr. Edwards learned how to numb his feelings with drugs at an early age. It is also clear from Mr. Edwards' criminal history that drugs impacted his life. Had Mr. Edwards learned alternative coping skills, during his adolescent years, perhaps he would not be before the Court. Unfortunately, that did not happen.

Despite his upbringing, Mr. Edwards is committed to ensuring that his daughters do not go down the same path. Mr. Edwards understands the impact on his children, growing up without their mothers, and he is committed to being present to raise his children. Mr. Edwards is determined to be an active and present part of his daughter's life and is committed to showing the Court that after fifty-seven months in prison, he can and will overcome the setback of this conviction.

Here, the parties have agreed to a guideline range of 57-62 months. The Court should reject the government's request for 62 months and sentence Mr. Edwards to fifty-seven months in prison.

### 3. The Purpose of Sentencing

Pursuant to the sentencing statute, a defendant's sentence should be designed: to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.] 18 U.S.C. § 3553(a)(2).

While the advisory guideline calculation remains an important consideration, it is "not the only consideration" in determining the appropriate

sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). To the contrary, the guidelines "'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)) (emphasis added). A sentencing court "may not presume that the Guidelines range is reasonable." *Gall*, 552 U.S. at 50 (citing *Rita*, 551 U.S. at 351).

Rather, the sentencing court must make an "individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. Above all, a court's final determination of a sentence must reflect "§3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the sentencing goals advanced in 3553(a)(2)," namely, retribution, deterrence, incapacitation, and rehabilitation. See *Kimbrough*, 552 U.S. at 111. In making these individual assessments, sentencing courts are free to disagree with the guidelines' recommended sentence in any particular case and may impose a different sentence based on a contrary view of what is appropriate under § 3553(a). This includes the freedom to disagree with "policy decisions" of Congress or the Sentencing Commission that are contained in the guidelines. See *Pepper v. United States*, 131 S. Ct. 1229, 1241 (Mar. 2, 2011).

In addition, and particularly troubling, data published by the Sentencing Commission and other evidence indicate that the brunt of the gun prosecutions and

accompanying increasingly severe sentences have been felt disproportionately and unjustly by African-Americans.

To be clear, Mr. Edwards does not dispute his guilt, but these specific facts do not warrant more than fifty-seven months in prison. This Court can and should impose a sentence at the lowest end of the guideline range. A 62-month sentence would be far greater than necessary to serve the purposes of sentencing.

**4. The Punitive Purpose of Sentencing Warrants a Fifty-Seven Month Sentence**

Section 3553(a)(2)(A) also requires the Court to consider "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," commonly referred to as punishment, deterrence incapacitation, and rehabilitation. As the plain language indicates, this provision requires the Court to consider these purposes in relation to the instant offense. The Court should also consider that the guideline range is an outgrowth of excessively punitive policies that have characterized criminal sentencing over the past several decades and that have disproportionately impacted African-American clients, like Mr. Edwards.

For him, even fifty-seven months represents significant punishment when measured against his criminal history. The punitive purpose of sentencing can be achieved with a sentence at the low end of the guideline range because it

incorporates his time already spent in custody.

Jail life is especially difficult when young men are living under the stress of constant supervision and are unable to make even the most basic decisions for themselves. Mr. Edwards has had to accept the harsh reality of life in a cell and has managed to avoid becoming embroiled in the chaos and conflict that plague D.C. Jail. Additionally, restrictions at the jail have subjected Mr. Edwards to intermittent and irregular phone access and restricted showering and recreation. Therefore, the time he has spent enduring the difficult conditions of D.C. Jail is more than sufficiently punitive.

5. **The Deterrent and Protective Purposes Warrant a Sentence at the Low End of the Advisory Range**

The statute also requires the Court to consider the "need for the sentence imposed . . . to afford adequate deterrence to criminal conduct" and the need to "protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(2)(B) & (C). While some opine that the higher the sentence, the greater the effect in deterring others, empirical research shows no substantial relationship between sentence length and deterrence. The general research finding is that "deterrence works," in the sense that there is less crime with a criminal justice system than there would be without one. However, the pertinent question for this Court is whether a term of imprisonment of 62 months in federal prison is minimally necessary to serve the purpose. The answer is a

9

resounding no.

Should this Court have any concerns that a fifty-seven month sentence would not adequately deter Mr. Edwards, the ensuing years of supervised release should assuage those concerns. During that time, Mr. Edwards will be strictly monitored by the U.S. Probation Office, and any failure to comply with the terms will result in swift and severe repercussions. Thus, coupling a period of imprisonment with the years of supervised release to follow, is adequate to meet the deterrent purpose of sentencing without resorting to the mechanically determined guideline range.

6. **The Rehabilitative Purpose of Sentencing Warrants a Sentence at the Low End of the Advisory Range**

Section 3553(a)(2)(D) requires the Court to consider "the need for the sentence imposed… to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." This purpose militates strongly in favor of a sentence at the low end of the advisory range. As a preliminary matter, Congress has explicitly directed that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). In other words, locking someone up neither achieves nor is a substitute for rehabilitation or achieving the goals set forth in § 3553(a)(2)(D). Thus, imprisoning Mr. Edwards for sixty-two months cannot be justified as offering him rehabilitation, educational, or vocational

training.

Most importantly, the Court should consider the impact that more than five years away from his children, at their impressionable age, will have on Mr. Edwards' daughter and family. Even with a sentence of fifty-seven months, Mr. Edwards will miss important milestones in his daughter's life. If Mr. Edwards is to have a chance to break the cycle of parenting at a young age, dropping out of school, violence, and felony convictions, he will need to be home to help raise his daughters.

Accordingly, a fifty-seven month sentence leaves open the possibility that Mr. Edwards' daughters will see their father striving to build a better life, proving that rehabilitation and redemption are possible. A higher sentence, on the other hand, would mean more than 5 years before Mr. Edwards' release.

### 7. The Kinds of Sentences Available

The sentencing statute requires the Court to consider "the kinds of sentences available." 18 U.S.C. § 3553(a)(3). A sentence of fifty-seven months, at the low end of the guidelines is consistent with the kinds of sentences available. Mr. Edwards pled guilty pursuant to a statute that does not set forth a mandatory minimum term of imprisonment. Therefore, the Court is free to impose the low end of the guidelines, making the requested sentence well within keeping with the kinds of sentences available.

Furthermore, these kinds of possessory gun offenses are routinely charged in D.C. Superior Court. While the USAO certainly has the authority to prosecute Mr. Edwards in U.S. District Court, the Court should scrutinize the government's motive when the decision improperly targets African-American men and is solely made to achieve a higher sentence. The Washington Post reported that the USAO's policy improperly targeted young black men in "Black Wards" and was not imposed city-wide[1].

The government does not have to articulate any basis for its decision to bring these charges in U.S. District Court. However, the decision has nothing to do with the notion that prosecution under the federal statute better fit the facts of this case, with anything about the elements of the different offenses that made prosecution under the federal statute more appropriate, with any change in policy regarding charging of a certain category of cases, or with concerns related to prosecutorial resources or judicial economy. Instead, the USAO brought these charges in federal court to increase its chances of obtaining a higher sentence. The Court should reject the government's request for a 62-month sentence.

8. **Avoiding Unwarranted Disparity**

The Court must also consider the need to avoid unwarranted disparities

---

[1] https://www.washingtonpost.com/local/legal-issues/dc-crackdown-on-gun-crime-targeted-black-wards-was-not-enforced-citywide-as-announced/2020/09/03/f6de0ce2-e933-11ea-970a-64c73a1c2392_story

among similar offenders. 18 U.S.C. § 3553(a)(6). However, this preference is not to avoid all disparities at all costs. Rather, it is to avoid unwarranted disparities; disparity remains an ameliorative tool to adjust the guidelines because "[f]air sentencing is individualized sentencing." *Fifteen Years of Guidelines Sentencing*, at 134 (Nov. 2004). Here, the parties have agreed to a sentence within the guideline range, and therefore there is no sentencing disparity.

### 9. The Need to Provide Restitution to Any Victims of the Offense

As noted in the PSR, a special assessment of 100.00 is mandatory, therefore restitution is not necessary, in this case.

## CONCLUSION

In sum, Mr. Edwards understands that he must double his efforts upon his release to better himself so that he can become a successful member of our society. Achieving this goal will undoubtedly be more difficult with this conviction, prison sentence, and Supervised Release.

Tiydre Edwards respectfully requests that this Court impose fifty-seven months in prison, a sentence within the advisory guideline range, that adequately serves the punitive, deterrent, and rehabilitative goals of sentencing. This sentence also accounts for Mr. Edwards' particular circumstances, while minimizing the negative impact on his family and his daughters.

Mr. Edwards looks forward to returning to his society and is committed to

having this be his final involvement with the criminal legal system. Mr. Edwards is also motivated to work on himself to ensure that he does not miss another day of freedom.

WHEREFORE, for the foregoing reasons and for any reasons that appear at the sentencing hearing, Mr. Edwards respectfully requests that the Court impose a sentence of fifty-seven months imprisonment, to be followed by a period of Supervised Release.

Respectfully Submitted,

Brandi Harden, Esq.
Counsel for Tiydre Edwards
Bar No. 470-706
Harden | Law, PLLC
400 7th Street NW, Suite 604
Washington, DC 20004
202.621.8268
b@hardenlawoffices.com